| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY, COLORADO<br><br>Court Address: 100 Jefferson County Parkway<br>Golden, CO 80149 | |
| **Plaintiff:**<br>PLIA, LLC, a Colorado limited liability company<br><br>v.<br><br>**Defendant:**<br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, a foreign corporation | Court Use Only<br><br>Case Number: CV |
| **Attorneys for the Plaintiff:**<br><br>J. Aaron Atkinson, #34564<br>ATKINSON \| BOYLE, PLLC<br>5575 S. Sycamore Ste. #101<br>Littleton, Colorado 80120<br><br>Phone Number: (720) 379-5480<br>Fax Number: (303) 479-2217<br>E-mail: Aaron@AtkinsonBoyle.com | Div./Ctrm.: |
| **COMPLAINT AND JURY DEMAND** | |

The Plaintiff, PLIA, LLC ("PLIA"), through counsel, Atkinson | Boyle, PLLC, hereby submits the following Complaint and Jury Demand against the Defendant:

## INTRODUCTION

1.  This action involves the commercial real property located at 7791 West Mississippi Avenue, Lakewood, Colorado 80226 ("the Building") owned by PLIA, which is situated in Jefferson County; as such, venue is proper in this Court.

2.  Plaintiff, P.L.I.A., LLC ("PLIA"), is a Colorado limited liability company in good standing in the State of Colorado whose address is at 3440

**EXHIBIT A**

Youngfield Street #412, Wheat Ridge, County of Jefferson, Colorado 80033.

3.  The members of PLIA are Patrick and Laurie Koentges.

4.  Upon information and belief, Defendant Travelers Casualty Insurance Company of America ("Travelers") is a Connecticut corporation duly authorized to conduct business in the State of Colorado.

5.  PLIA's customary business is developing commercial real estate for profit.

6.  All conditions precedent to this action have been fulfilled.

7.  The damages in this case exceed $15,000.

## STATEMENT OF FACTS

### I.   *Insurance Application and Policy*

8.  PLIA incorporates herein paragraphs one through seven.

9.  PLIA designed and constructed the Building, which the company fully occupied throughout the year 2010.

10. The City of Lakewood issued PLIA a building permit for the Building, which was posted conspicuously in a window in the Building and visible from the Building's exterior on or about September 17, 2010.

11. During the summer of 2010, Mr. Koentges asked Alpine Insurance Agency to procure insurance coverage on behalf of PLIA for the Building.

12. On or about August 16, 2010, Alpine Insurance Agency sent the policy issued by Travelers covering the Building to the attention of Mr. Koentges, which policy purported to be effective for the period beginning on August 6, 2010 through August 6, 2011. Policy No. I-680-4354R818-ACJ-10 ("the Policy") reflects limits of liability of $2,000,000 for each occurrence and $4,000,000 in the aggregate.

### II.  *Causes of Loss*

13. PLIA incorporates herein paragraphs one through twelve.

14. On the night of September 17-18, 2010, within the Policy period, persons whose names and addresses are unknown vandalized the Building and stole various items of business personal property located on the premises.

15. This event occurred less than sixty days following the issuance of the Policy.

16. The damages include but are not limited to: broken light fixtures within the Building; extensive and permanent graffiti effected on the interior walls; torched electrical outlets; the vandals defecated in the interior offices; destroyed interior maple doors; destroyed front door; broken windows on the main floor; and stole extensive and expensive copper tubing from the premises.

17. After immediately reporting this incident to the Lakewood Police Department, Mr. Koentges called Travelers and made a claim.

18. A representative from Travelers represented over the phone that he would arrange for an investigator to meet Mr. Koentges at the Building to inspect the damage and investigate the loss.

19. In spite of three missed appointments by the inspector from Travelers, no inspection of the damage to the interior of the Building ever occurred.

20. Despite its failure to adjust the claim or gather any pertinent facts, Travelers adjuster Josh Golding sent a letter to Mr. Koentges on November 4, 2010—over a month after the loss occurred—shirking its responsibilities under the Policy by denying coverage.

21. In its denial, Golding wrote that "it is the position of Travelers Casualty Insurance Company of America that coverage does not exist for the loss" because of an exclusion in the policy stating that

> We will not pay for any loss or damage caused by [vandalism or "Theft"] . . . if the building where loss or damage occurs has been "vacant" for more than 60 consecutive days before that loss or damage occurs[].

22. Golding went on to assert: "we are unable to cover losses to a building from vandalism or theft when that building has been vacant for more than 60 consecutive days leading up to the loss."

23. For more than a month following the first loss, Travelers neglected to cancel the Policy or conversely to verify coverage—while still retaining the premium paid for this coverage—which left PLIA stranded in an uninsured state of limbo and leaving it vulnerable to damages and losses.

3

24.   Within days after Mr. Koentges received the denial of the first claim, a second and significantly more destructive incident of vandalism occurred at the Building.

25.   Over the course of the night of November 13 through 14, 2010, persons whose names and addresses are unknown broke into the Building and severely damaged the Building, with damages including but not limited to the following: destroyed drywall on ceilings and walls; destroyed framed walls; destroyed baseboard and trim; destroyed doors; stolen in-wall copper tubing; destroyed elevator panel and damaged elevator car; destroyed light fixtures throughout the Building; graffiti covering much of the interior drywall; damaged "Exit" signs throughout the Building; destroyed in-wall electrical wiring throughout the Building; damage to utility service meters; extensive damage to business property; destroyed electrical outlets and switches; stolen electrical panels; and destroyed glass windows.

26.   Mr. Koentges again promptly reported this to the Lakewood Police Department and then initiated another claim with Travelers.

27.   Thereafter, Travelers adjuster Bradley DePuis informed Mr. Koentges again that an investigator would meet him at the Building to conduct an investigation.

28.   The inspector from Travelers failed to show up for two scheduled meetings with Mr. Koentges, and no inspection of the damage to the interior of the Building ever occurred.

29.   On or about December 13, 2010—one month after the more destructive loss—Travelers adjuster Bradley DePuis sent Mr. Koentges a letter disclaiming coverage under the Policy citing the same reasoning set forth in its November 4, 2010 denial.

30.   From that time through January 15, 2011, Travelers failed to cancel the Policy or conversely to verify coverage, all the while retaining the premium PLIA paid for coverage.

31.   By reason of the circumstances described herein, as a result of being wrongfully denied insurance proceeds, PLIA suffered and continues to suffer extensive business losses.

32.   Furthermore, Travelers forced PLIA into a state of limbo with respect to the existence of insurance coverage by virtue of suspicious reasoning in denying both claims, which jeopardized

not only PLIA's business, but also the financing of the Building, which requires insurance coverage.

33. During both of the claims processes, Travelers never requested an examination under oath from Mr. Koentges.

34. During both of the claims processes, Travelers never requested any additional information when it was offered in an effort to resolve the dispute, and no one from Travelers ever inspected the damage to the interior of the Building.

35. During both of the claims processes, Travelers never filed any request for declaratory judgment on the issue of coverage.

36. During both of the claims processes, Travelers never offered to submit the matter to any alternative dispute resolution.

37. Prior to the filing of this suit, Travelers declined to even respond to two requests on behalf of PLIA for information including a copy of Mr. Koentges's recorded statement(s) incident to these claims or the results of the on-site investigation performed at the Building after each loss.

38. Travelers issued a Notice of Cancellation to PLIA on or about January 15, 2011 with an effective date of March 2011.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

39. PLIA incorporates herein paragraphs one through thirty-eight.

40. In consideration of the payment of an annual premium paid by PLIA, Travelers, by its duly authorized agents and representatives, executed and delivered a contract to PLIA, in and by which Travelers undertook to and did insure vandalism and theft as occurred at the Building.

41. Under the terms of the Policy, Travelers agreed and promised to make good and indemnify PLIA against all loss or damage not exceeding the sum of $4,000,000 sustained by PLIA during the indicated period of time through direct loss of any of such property occasioned by its unlawful abstraction from the premises by any person or persons making forcible entry on or into the premises.

42. While the Policy was in full force and effect, acts of burglary and vandalism were committed on the described premises by means of a

forcible entrance onto the premises, of which force there was visible evidence.

43.   By reason of the two instances of burglary, vandalism and forcible entrance, PLIA was deprived of, and there was unlawfully abstracted from the interior of the premises, the property described above, of a value to be determined at trial in this matter, which was the property of PLIA at and before the instances occurred.

44.   PLIA performed all conditions, provisions, and terms of the Policy on its part to be performed.

45.   Consequently, under the terms of the Policy, PLIA became entitled to receive from Travelers, and Travelers became obligated to pay to PLIA, the agreed-upon benefits.

46.   Travelers breached the contract by failing to pay the benefits due, and acted in conscious disregard of the rights of PLIA.

47.   As a proximate result of Travelers's breach of the Policy through its failure and refusal to pay the benefits due, among other breaches, PLIA has been damaged in a sum that will be proven at trial in this matter.

### SECOND CLAIM FOR RELIEF
### RESPONDEAT SUPERIOR

48.   PLIA incorporates herein paragraphs one through forty-seven.

49.   Throughout the circumstances described herein, Alpine Insurance Agency was the agent of Travelers.

50.   Alpine Insurance Agency is a corporation and can act only through its officers and employees.

51.   Any act or omission of an agent of Travelers while acting within the scope of his or her authority is the act or omission of Travelers.

52.   Alpine Insurance Agency was in fact acting within the scope of its authority at the time of the circumstances described herein.

53.   As such, the acts and omissions of Alpine Insurance Agency are the acts or omissions of Travelers.

54.   As a result of those acts and omissions, PLIA has sustained extensive damages to be proven at trial.

55. Travelers is therefore liable for those damages under the doctrine of respondeat superior.

## THIRD CLAIM FOR RELIEF
## VIOLATIONS OF C.R.S §§ 10-3-1115 and 1116 (2010)

56. PLIA incorporates herein paragraphs one through fifty-five.

57. Travelers denied and delayed payment of a covered benefit without a reasonable basis for doing so, and otherwise willfully acted in an unreasonable manner in adjusting PLIA's claims described above.

58. Travelers's unreasonable conduct was a cause of the delay and ultimate denial of PLIA's claims and, by extension, of PLIA's damages.

59. Travelers was required to act in good faith and deal fairly and reasonably with PLIA and do nothing to interfere with the rights of PLIA to receive the benefits under the Policy.

60. Travelers unreasonably deviated from industry standards and practices by denying PLIA's claims on the grounds that the building was vacant when it was, in fact, consistently occupied by PLIA in the ordinary course of its business, which would have been readily apparent had Travelers reasonably investigated the claims through gathering facts.

61. Travelers also unreasonably deviated from industry standards by issuing a policy that provided only illusory coverage and by retaining premiums paid while providing no coverage.

62. At all times mentioned, and notwithstanding Travelers's knowledge of its obligation to pay PLIA the full costs and expenses to remediate the Building, among others, under the Policy, Travelers intentionally, willfully, maliciously, oppressively, unreasonably, recklessly, and fraudulently refused and failed to pay PLIA the costs and expenses in accordance with the terms of the Policy.

63. As such, PLIA has sustained extensive damages as set forth herein and is entitled to recovery of all available damages from Travelers in accordance with Colorado law, which will be proven at trial.

## FOURTH CLAIM FOR RELIEF
## VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT, C.R.S. §§ 6-1-101 through 1120 (2010)

64. PLIA incorporates herein paragraphs one through sixty-three.

65.  Travelers engaged a deceptive trade practice as set forth more thoroughly above.

66.  The deceptive trade practice significantly impacted the public as actual or potential consumers of the Defendant's services.

67.  PLIA was an actual consumer of the Defendant's services and was injured in the course of its business as a result of the deceptive trade practice.

68.  The deceptive trade practice caused actual damages or losses to PLIA.

69.  As a result, PLA is entitled to all available damages from Travelers in accordance with the Colorado Consumer Protection Act.

### FIFTH CLAIM FOR RELIEF
### FRAUDULENT MISREPRESENTATION

70.  PLIA incorporates herein paragraphs one through sixty-nine.

71.  Throughout the circumstances described herein, Travelers and its representatives and agents made false representations to PLIA concerning past and present facts, including but not limited to those related to coverage under the Policy.

72.  These representations were material.

73.  At the time the representations were made to PLIA, Travelers either knew the representations were false or was aware that it did not know whether the representations were true or false.

74.  Travelers through its representatives and agents made the representations with intent to induce PLIA to rely on them.

75.  PLIA relied upon their representations, purchased the Policy, and paid Travelers the first year's premium.

76.  PLIA believed in the skill, experience and honesty of Travelers, its representatives and its agents, and its reliance was justified.

77.  PLIA gave timely notice and complied with all the conditions of the Policy, but Travelers refused to compensate PLIA for the losses on the grounds that the terms of the Policy did not cover either loss, while still retaining PLIA's premium for more than three months.

78.  Had PLIA's representatives known Travelers's true intentions, PLIA would not have purchased the Policy.

79. By reason of the fraudulent misrepresentations as alleged, PLIA was induced to purchase the Policy, which ultimately caused it damages and losses that will be proven at trial in this matter.

## SIXTH CLAIM FOR RELIEF
## REFORMATION OF INSURANCE POLICY

80. PLIA incorporates herein paragraphs one through seventy-nine.

81. Travelers through its representatives and agents represented to PLIA that it would formulate an insurance program and cause the necessary policy or policies to be written and issued sufficient to give PLIA full protection against risks, including, among others, risks from vandalism and theft at the Building.

82. PLIA placed complete confidence in Travelers and its representatives and agents, and relied upon it exclusively to formulate an insurance program sufficient to protect it against liabilities that might arise in conducting its business.

83. Travelers knew that PLIA was relying upon it to provide adequate insurance coverage and that PLIA's officers and agents were unlearned in insurance matters.

84. On or about August 16, 2010, Travelers, for due payment of the premiums, issued the Policy, which it represented to PLIA as providing sufficient coverage.

85. On two separate occasions, the Building was vandalized and burglarized and PLIA promptly initiated claims with Travelers pursuant to the terms of the Policy.

86. Subsequently, Travelers, through its agents and representatives, disclaimed responsibility for coverage on the basis that the Policy did not insure against the causes of loss asserted, while still retaining the premiums for over three months.

87. As a consequence of Travelers's disclaimer of responsibility, PLIA has suffered damages to be proven at trial.

88. PLIA has no adequate remedy at law, but alleges that it is entitled in equity to a reformation of the Policy so as expressly to insure PLIA against the causes of loss described herein.

89.    PLIA alleges that it it's entitled to have the Policy reformed to conform to the agreement between PLIA and Travelers that all of PLIA's business risk would be insured.

## SEVENTH CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION

90.    PLIA incorporates herein paragraphs one through eighty-nine.

91.    Travelers gave false information to PLIA concerning, among other issues, coverage under the Policy.

92.    Travelers gave such information to PLIA in the course of PLIA's business.

93.    Travelers gave the information to PLIA for the purposes of insuring the Building, which was necessary for its business.

94.    Travelers was negligent in obtaining or communicating the information.

95.    Travelers gave the information with the intent or knowing that PLIA would act or decide not to act in reliance upon the information.

96.    PLIA reasonably relied on the information supplied by Travelers.

97.    This reliance on the information supplied by Travelers caused damage to PLIA.

98.    As such, Travelers is liable to PLIA for its damages, which will be proven at trial in this matter.

WHEREFORE, due to the foregoing, PLIA has suffered damages and demands judgment against Defendant for the following damages, injuries and losses:

a.    Compensatory damages;
b.    Consequential damages;
c.    Special damages, according to proof;
d.    Damages due to emotional distress;
e.    Double damages pursuant to Colorado Revised Statutes sections 10-3-1115 through 1116 (2010);
f.    Treble damages pursuant to sections 6-1-101 though 1120;
g.    Costs;
h.    All applicable interest by law;
i.    That the Policy be reformed so as specifically to include within its coverage the losses discussed herein;
j.    Attorneys' fees;
k.    Damages due to loss of use; and

10

l.      Such other and further relief as the Court deems just and proper.

PLAINTIFF REQUESTS THAT ALL ISSUES HEREIN
BE TRIED TO A JURY OF SIX PERSONS.

Dated this 1st day of March 2011.

ATKINSON | BOYLE, PLLC

*Original Signature on File*
S/ J. Aaron Atkinson

J. Aaron Atkinson, #34564
Attorney for Plaintiff

Plaintiff's Address:

PLIA, LLC
3440 Youngfield St., #412
Wheat Ridge, CO 80033

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March 2011, a true and correct copy of the foregoing COMPLAINT AND JURY DEMAND was filed via Lexis Nexis File & Serve.

*Original Signature on File*
S/J. Aaron Atkinson
J. Aaron Atkinson

| District Court Jefferson _____ County, Colorado | |
| --- | --- |
| Court Address: 100 Jefferson County Parkway<br>Golden, CO 80149 | |
| Plaintiff(s):<br>PLIA, LLC<br>v.<br><br>Defendant(s):<br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA | ▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address):<br>J. Aaron Atkinson<br>Atkinson \| Boyle, PLLC | Case Number:<br>2011cv890 |
| Phone Number:720-379-5480     E-mail: Aaron@AtkinsonBo<br>FAX Number:303-479-2217        Atty. Reg. #34564 | Division          Courtroom |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases.

2. Check the boxes applicable to this case.

   ☐ Simplified Procedure under C.R.C.P. 16.1 **applies** to this case because this party does not seek a monetary judgment in excess of $100,000.00 against another party, including any attorney fees, penalties or punitive damages but excluding interest and costs and because this case is not a class action or forcible entry and detainer, Rule 106, Rule 120, or other expedited proceeding.

   ☑ Simplified Procedure under C.R.C.P. 16.1, **does not apply** to this case because (check one box below identifying why 16.1 does not apply):

      ☐ This is a class action or forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding,     **or**
      ☑ This party is seeking a monetary judgment for more than $100,000.00 against another party, including any attorney fees, penalties or punitive damages, but excluding interest and costs (see C.R.C.P. 16.1(c)),     **or**
      ☐ Another party has previously stated in its cover sheet that C.R.C.P. 16.1 does not apply to this case.

3. ☑ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Date: 3/__/11 _____          _____ *(signature)*
Signature of Party or Attorney for Party

**NOTICE**
✓ This cover sheet must be filed in all District Court Civil (CV) Cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.
✓ This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.
✓ This cover sheet shall not be considered a pleading for purposes of C.R.C.P. 11.

JDF 601  7/04   DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT